IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOSEPH R. ERNST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:11-cv-625 |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT WELLS FARGO'S SUR-REPLY TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendant Wells Fargo Bank, N.A. as successor to Wachovia Mortgage, FSB ("Wells Fargo"), by counsel, files its Sur-Reply to Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment ("Reply"), and states as follows:

### I. INTRODUCTION

By Order entered on February 22, 2012, the Court granted Wells Fargo's Motion for Leave to File a Sur-Reply for the limited purpose of addressing new material raised in the Reply, namely the deposition testimony of Kathleen Hill and the export report of Jean Noonan. Wells Fargo's Sur-Reply is limited to this material.

In essence, this case boils down to two issues: (1) whether Wells Fargo had a reasonable belief that its reporting of the mortgage loan attributed to the Plaintiff was accurate; and (2) whether Wells Fargo's investigation of the Plaintiff's claims of identity theft was reasonable. The Court should deny the Plaintiff's motion for partial summary judgment because both questions can be answered in the affirmative. Furthermore, while the Plaintiff's own actions (or

lack thereof) raised doubts as to his claim, if a furnisher such as Wells Fargo fulfills its duties, as was the case here, and conducts a reasonable investigation, the furnisher is not liable and cannot be liable to the consumer if the reporting ultimately turns out to be erroneous. Contrary to the Plaintiff's claims that his own actions are irrelevant in this case to the issue of liability, Wells Fargo alleges the Plaintiff's failure to assist Wells Fargo with its investigation or to be forthcoming with relevant information that would have assisted Wells Fargo in its investigation preclude summary judgment for the Plaintiff in this case on either issue.

## II. NEW MATERIAL IN PLAINTIFF'S REPLY

The Reply contains new material, erroneously relied upon by the Paintiff with regard to Wells Fargo Financial Crime Analyst, Kathleen Hill, who was deposed on February 9, 2012. In addition, the opinion of Wells Fargo's expert witness, Jean Noonan, was disclosed after Wells Fargo served it brief in opposition to the Plaintiff's motion. New material relied upon by the Plaintiff is specifically contradicted by the following:

1. *Plaintiff's Reply:* The mortgage loan was obtained by Plaintiff's estranged father, Thomas Ernst, who used the power of attorney to apply for a mortgage and forged his signature on the power of attorney. (Deposition of Kathleen Hill, ("Hill Depo.") 67:2-25, Exhibit A).

    ***Sur-Reply***: Ms. Hill testified that she "found nothing to refute or to prove [this] either way." (Hill Depo. 67:7-8). Further, counsel for Wells Fargo <u>intended</u> the stipulation to mean that the signature on the power of attorney cannot positively be attributed to the Plaintiff. See Declaration of Terry Frank ("Frank Declaration"), Exhibit B.) The Plaintiff's expert, Robert Lesnevich, only opined that signature did not belong to the Plaintiff. His opinion does not conclude that it was a forgery.

2. *Reply:* There is no dispute that the Thomas Ernst fraudulently obtained the mortgage as the Defendant has so stipulated. (Hill Depo. 18:14-17; 68:1-5).

    ***Sur-Reply***: Wells Fargo did not stipulate that the mortgage was fraudulently obtained, and the portions of Ms. Hill's deposition cited by the Plaintiff do not support that statement. See also Frank Dec.

As Ms. Hill's transcript was available to the Plaintiff when he prepared his Reply, but not to Wells Fargo, both a full and complete picture of her testimony, as well as that of Wells Fargo's expert Jean Noonan, are relevant to the Court's ultimate determination that the Plaintiff is not entitled to summary judgment in this case. The Court should also consider the following new material:

- The Plaintiff was unwilling to file a police or identity theft report despite multiple inquires from Wells Fargo. (See generally, Hill Depo.; see also, Wells Fargo's Rule 26(a)(2) Witness Designation and Report of Jean Noonan ("Report of J. Noonan"), p. 9 [Dkt. 48].

- Kathleen Hill contacted the notary as part of her investigation, who advised her that he would only provide the requested information directly the Plaintiff. (Hill Depo., 90:4-17), and she then provided the Plaintiff with the notary's contact information and asked him to follow up (id.). The Plaintiff was also unwilling to contact the notary who had notarized the power of attorney allegedly bearing his signature, despite being told this was one of the first steps to lend credence to his claims of identity theft. (Hill Depo. 95:12-15; Report of J. Noonan, p. 9).

- The Plaintiff declined to put a password on his account despite warnings from Wells Fargo that someone pretending to be him was attempting to access the account. (Hill Depo. 26:24-25:8; Report of J. Noonan, p. 8).

- The Plaintiff told Kathleen Hill that he "only lived on the subject property … for three months" (Depo. K. Hill, 88:7-8), and failed to mention that he resided at the property for a period of time between 2007 and 2009 (Id. at 88:11-13; Depo. J. Ernst, 32: 14-23). He also resided at the property with his mother and aunt, despite their role in the alleged fraud. (Id.)

- He feigned surprise when Kathleen Hill revealed the results of her review of the status of the title (that the property had been transferred back to his aunt) (Hill Depo., 86:22-87:9), despite having researched the title himself a year prior (J. Ernst Depo. 93:5-7, Reply p. 9).

- Coincidentally, the Plaintiff first disputed this loan with Wells Fargo shortly after it went delinquent. (Wells Fargo's Answer to Int. No. 2). Contrary to the Plaintiff's unsupported assertion that this loan was always delinquent (Reply p.6 fn. 4), the loan payments were current until June 2008.

### III. ARGUMENT

**A.   Wells Fargo's refusal to delete the trade line is warranted given that it had no reasonable cause to believe its reporting was inaccurate.**

The Court should deny the Plaintiff's motion because as a threshold matter, the Plaintiff ignores the definition of "accuracy" as it applies to the Fair Credit Reporting Act ("FCRA"). Although not defined in the FCRA, the Federal Trade Commission ("FTC") and related banking regulators define "accuracy" when applied to furnishers of credit as follows:

> *Accuracy* means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly: (1) reflects the terms of and liability for the account or other relationship; (2) reflects the consumer's performance **and other conduct with respect to the account or other relationship**; and (3) identifies the appropriate consumer. 16 C.F.R. 660.2[1] (emphasis added). See also, Report of J. Noonan, p. 4

The Plaintiff is not entitled to summary judgment because: (a) this new material further demonstrates that Wells Fargo had a reasonable belief that its reporting was accurate, and (b) the Plaintiff's allegations do not constitute the "specific knowledge" required by the FCRA that make Wells Fargo liable for having concluded otherwise. While the Plaintiff's claims are for alleged violations of 15 U.S.C. § 1681s-2(b), it is important to look at the definitions provided by § 1681s-2(a), which address the duty of furnishers of information to provide accurate information. 15 U.S.C. § 1681(a)(1)(A) provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681(a)(1)(A). Subsection D makes clear that "the term 'reasonable cause to believe' that the information is inaccurate" means having **specific knowledge, other than solely allegations by the consumer**,

---

[1] See also, 12 C.F.R. § 41.41(a); 12 C.F.R. § 222.41(a); 12C.F.R. 334.41(a); 12 C.F.R. 571.41(a).

that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D)(emphasis added).

The Plaintiff provided Wells Fargo with nothing more than his own allegations to support his claims of identity theft.[2] He was repeatedly asked by Kathleen Hill for more information, and despite several attempts by Ms. Hill to follow-up, the Plaintiff failed to do so. (Hill Depo., 89:3-11. Indeed, it was precisely the Plaintiff's lack of cooperation and unwillingness to assist Wells Fargo in its investigation that caused Wells Fargo to doubt the veracity of his claims. (Report of Noonan, p. 9-10). In addition, Plaintiff's counsel mischaracterizes Wells Fargo's position in his Reply when he claims that "[t]o continue to aggressively litigate a position that the Defendant knows is false, pretending the report was accurate … wastes the resources of both parties and the Court." (Reply, p. 2).

To be clear – Wells Fargo is litigating its position because there are a number of factors to suggest that the Plaintiff was not entirely forthcoming with Wells Fargo during the course of its investigation, and therefore has a reason to believe that its reporting was accurate. Such factors include those recited on page 3 above, such as: (1) the Plaintiff's unwillingness to file a police report (see generally, Hill Depo.; J. Noonan Report, p. 9); (2) the Plaintiff's unwillingness to contact the notary (Hill Depo. 95:12-15; Report of J. Noonan, p. 9); (3) the Plaintiff's refusal

---

[2] Congress certainly believed that identity theft was an important problem, and created a procedure to deal with such claims swiftly. For whatever reason, the Plaintiff elected not to go that route in this case. Indeed, the FCRA provides specific duties of furnishers upon notice of identity theft-related information. A furnisher "shall have in place reasonable procedures to respond to any notification that it receives from a consumer reporting agency under [15 U.S.C. § 1681c-2] relating to information resulting from identity theft, to prevent that person from refurnishing such blocked information. See 15 U.S.C. § 1681s-2(a)(6). Indeed, a credit reporting agency is required to block reporting within four (4) days of receipt of an identity theft report from a consumer. 15 U.S.C. § 1681c-2. A consumer's failure to file an identity theft report, however, is grounds for summary judgment in favor of a reporting agency and furnisher. Thomas v. Early Warning Services, LLC, Case L-10-0825 (D. MD, Jan. 5, 2012). See Exhibit C.

to place a password on his account despite warnings from Wells Fargo (Hill Depo. 26:24-25:8; Report of J. Noonan, p. 8); (4) the Plaintiff's misstatement of truth as to when he resided on the Property (Hill Depo., 88:7-8); and (5) his "surprise" when Kathleen Hill revealed the results of her review of the status of the title (that the property had been transferred back to his aunt) (Hill Depo., 86:22-87:9), despite having researched the title himself a year prior (J. Ernst Depo. 93:5-7).

In short, Wells Fargo's actions, as evidenced by Ms. Hill's testimony, and opined by Ms. Noonan, is entirely consistent with section 1681s-2(a) of the FCRA in that it had no specific knowledge of the Plaintiff's claims, and given his lack of cooperation, was not obligated to rely solely on the Plaintiff's allegations. See 15 U.S.C. 1681s-2(a)(1)(D). The Court should deny the Plaintiff's motion for partial summary judgment because there remain a number of material facts in dispute with regard to accuracy.

**B.    Wells Fargo's investigation of the Plaintiff's claims was reasonable.**

The Court should deny the Plaintiff's motion because erroneously places a higher burden of investigation on Wells Fargo than is required by the FCRA. First and foremost, Wells Fargo's investigation and reinvestigation of the Plaintiff's claims of identity theft were more than reasonable. Wells Fargo took the following steps, among others, to investigate his claims:

- Kathleen Hill interviewed the Plaintiff by telephone. (Hill Depo., 83:18-22).

- The chain of title was examined. (Id. at 83:22-25).

- Ms. Hill ran a background check on the names that appeared in the title documents, and conducted subsequent interviews with the Plaintiff to discuss. (Id. at 85:11-19).

- She requested additional documentation from the Plaintiff, which he ignored, regarding his allegations that his father had done "similar things" in Indiana and Missouri. (Id. at 88:23-89:8).

6

- She contacted the notary after multiple attempts, who refused to provide information to Wells Fargo but did offer to provide it to the Plaintiff. (Id. at 89:12-23). The Plaintiff was unwilling to do so.

- Ms. Hill followed up with the Plaintiff multiple times after each state of her investigation to review the status and to seek additional information from the Plaintiff. (Id. at 84:1-9; 86:4-13; 90:4-17).

- After Ms. Hill concluded her investigation, the matter was referred to Wells Fargo's Title Resolution Department, which continued to investigate the Plaintiff's claims. (Id. at 34:21-22)

- Wells Fargo employees Chris Carron, Juan Imperial and Kathryn Fuller each re-investigated the claims again upon receipt of the Automated Consumer Dispute Verification ("ACDV").

The Plaintiff's arguments that Wells Fargo should have more heavily scrutinized the underlying loan documents are also without merit. To do so, the Plaintiff would have Wells Fargo alter the underwriting process (Hill Depo., 77:18-78:10), which is entirely unreasonable. The underwriting process is established by a variety of lending investors, including Fannie Mae and Freddie Mac and others. (Hill Depo. 78:2-10). Certain loans, as were common during this time frame (2007), include "no-doc/ stated income loans", which required very little documentation from borrowers. Hill testified that Wells Fargo policy for review of a complaint alleging identity theft begins with a re-verification of documents supplied in the underwriting process. (Id. at 76:12-19). However, when the underwriting process did not require such documentation, as was the case here, "then normally we would not, if [the underwriter] didn't require them to begin with, then there's nothing really to verify." (Id. at 77:15-17).

Plaintiff's counsel makes much to do about the fact that Ms. Hill wanted to believe the Plaintiff, however he omits the portions of her testimony that suggest why this was not enough to remove the trade line from his credit report. When asked why, Ms. Hill testified that "he had not provided me with any kind of evidence" to support his claims. (Hill Depo., 93:3-4). When a

7

consumer fails to take any action to affirmatively further their cause, as was the case here, Wells Fargo can investigate based only on the information, primarily loan documents, it has at hand. During the period of its multiple investigations of the Plaintiff's claims, Wells Fargo had no specific knowledge that its reporting was allegedly inaccurate. Consumers faced with identity theft typically do not behave like the Plaintiff did in this case. (Hill Depo., 98:1-13). As a result, Wells Fargo was unable to make a determination during its investigation that there was conclusive evidence of fraud. (Id. at 99:11-15).

C. **Because the Plaintiff simply regurgitated the same claim over and over, without offering additional facts to support his claim, Wells Fargo had no obligation to re-investigate a fully investigated claim.**

Summary judgment should be denied in this case as the Plaintiff simply repeated his dispute, but offered no additional information to substantiate his claims of identity theft. Section 1681s-2(a)(8) of the FCRA identifies "the circumstances under which a furnisher shall be required to reinvestigate a dispute concerning the accuracy of information contained in a consumer report." 15 U.S.C.A. § 1681s-2(a)(8). 15 U.S.C. § 1681s-2(a)(8)(F), however, makes this section inapplicable if the consumer's dispute is frivolous or irrelevant. 15 U.S.C. § 1681s-2(a)(8)(F). "Frivolous and irrelevant" are defined, in part, by

> (I) reason of the **failure of a consumer to provide sufficient information to investigate the disputed information**; or
>
> (II) the submission by a consumer of a dispute that is **substantially the same as a dispute previously submitted by or for the consumer**, either directly to the person or through a consumer reporting agency under subsection (b) of this section, with respect to which the person has already performed the person's duties under this paragraph or subsection (b) of this section, as applicable. See 15 U.S.C. § 1681s-2(8)(F)(i)(I)-(II)(emphasis added).

Wells Fargo's expert will testify that "whether a creditor's reinvestigation is reasonable depends in part on the details it receives regarding the basis for the consumer's dispute. A

8

creditor is not required to reinvestigate a dispute that is frivolous or irrelevant, including a dispute previously submitted and investigated that contains no new information." (Report of J. Noonan, p. 2). "The actions Wells Fargo took in response to Plaintiff's direct disputes and disputes through consumer reporting agencies were reasonable and consistent with industry practice. (Id. at p. 3). Wells Fargo does not dispute that the Plaintiff contacted it multiple times, yet at no time did the Plaintiff provide meaningful information to assist Wells Fargo with its investigations. In fact, the Plaintiff's disputes were "substantially the same" as his prior disputes, the very definition of frivolous and irrelevant under the FCRA. As such, the Court should deny the Plaintiff's motion.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Motion for Partial Summary Judgment should be denied.

**WELLS FARGO BANK, N.A.,**

/s/ Terry C. Frank
By Counsel

Hunter W. Sims, Jr., Esquire (VSB No. 09218)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
Phone: (757) 624-3000
Fax: (757) 624-3169

Terry C. Frank, Esq. (VSB No. 74890)
KAUFMAN & CANOLES, P.C.
Two James Center
1021 E. Cary St., 14th Floor
Richmond, VA 23219
Phone: (804) 771-5700
Fax: (804) 771-5777
*Counsel for Defendant Wells Fargo Bank, N.A., successor to Wachovia Mortgage FSB*

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 24 day of February 2012, a true copy of the foregoing has filed with the Court's CM/ECF system, which will provide electronic notice to:

| | |
|---|---|
| Leonard A. Bennett, Esquire | Kristi Cahoon Kelly, Esquire |
| E-mail: lenbennett@cox.net | E-mail: kkelly@smillaw.com |
| Susan M. Rotkis, Esquire | Surovell Isaacs Petersen & Levy, PLC |
| E-mail: srotkis@clalegal.com | 4010 University Drive, Suite 200 |
| Consumer Litigation Associates, PC | Fairfax, VA 22030 |
| 763 J. Clyde Morris Blvd. 1-A | Phone: 703/277-9774 |
| Newport News, VA 23601 | Fax: 703/591-2149 |
| (757) 930-3660 | ***Counsel for Plaintiff*** |
| (757) 930-3662 facsimile | |
| ***Counsel for Plaintiff*** | |

                                            By:   /s/ Terry C. Frank
                                                Terry C. Frank, Esquire (VSB No. 74890)
                                                Kaufman & Canoles, P.C.
                                                1021 E. Cary Street, 14th Floor
                                                Richmond, VA 23219
                                                Phone: (804) 771-5745
                                                Fax:    (804) 771-5777
                                                E-mail: tcfrank@kaufcan.com

11567521_1.DOC